# UNITED STATES DISTRICT COURT
### for the
### Middle District of North Carolina

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>FOUR CELLULAR TELEPHONES IN CUSTODY OF<br>HSI PRESENTLY STORED AT 426 GALLIMORE DAIRY<br>ROAD – STE 100 IN GREENSBORO | ) ) ) ) ) ) ) | Case No. 1:23MJ122-1 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Middle _____ District of _____ North Carolina _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Possession with Intent to Distribute Controlled Substances, and Conspiracy to Distribute Controlled Substances |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/S/ Tyler Dishmond
_____
*Applicant's signature*

HSI Special Agent Tyler Dishmond
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 03/14/2023 _____ 12:07 pm

_____
*Judge's signature*

City and state: Durham, North Carolina

Joe L. Webster, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## SEARCH AND SEIZURE WARRANT

I, Tyler Dishmond, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     This is an Affidavit in support of an application for a warrant authorizing the search of four devices (SUBJECT DEVICES) in the custody of Homeland Security Investigations (HSI) Greensboro at 426 Gallimore Dairy Road – STE 100, Greensboro, NC. The SUBJECT DEVICES, seized on February 24, 2023, are as follows and described in Attachment A:

> Samsung (SM-S901U) Cellular Device
> S/N R5CT438DYXX; and
>
> Samsung (SM-F926U) Cellular Device
> S/N R3CRC02BTLR; and
>
> Black iPhone seized from Alfredo Pizzaro ORTIZ person; and
>
> Blue Samsung cell phone seized from ORTIZ belongings
> IMEI: 351347074317538

Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1), possession with intent to distribute a controlled substance, and conspiracy to commit the same (Section 846), have been committed by Rafael RODRIGUEZ Jr. (herein after referred to as RODRIGUEZ) and Alfredo ORTIZ-Pizzaro (herein after referred to as ORTIZ)

and others. There is probable cause to believe that the SUBJECT DEVICES will contain evidence of these criminal violations and will lead to the identification of individuals who have engaged in the commission of controlled substance offenses.

## AFFIANT AND EXPERTISE

2.     Your Affiant is an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Title 8, 18, 19, 21, 31 United States Code and other related offenses.

3.     I was previously employed as a Special Agent with the United States Air Force, Office of Special Investigations (OSI) from August 2017 until December 2019. While employed as an OSI Special Agent I completed the Criminal Investigator Training Program and the OSI Basic Special Investigators Course at the Federal Law Enforcement Training Center (FLETC). I have been employed as a Special Agent with HSI since January 5, 2020, during which time I have completed the HSI Special Agent Training program at FLETC.

4.     I am currently assigned to the Narcotics and Bulk Cash Smuggling Group in the HSI Greensboro office and have conducted investigations focusing

on international narcotics trafficking involving the unlawful importation, transportation, and distribution of controlled substances and related money laundering activities. Through investigations and both formal and on the job training, I have become familiar with the methods and schemes employed by narcotics dealers to obtain, smuggle and distribute illegal narcotics. I am currently one of the assigned case agents of the investigation referred to in this Affidavit, which is comprised of representatives from HSI and various other state, county, and city police agencies.

5.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

6.     Through training, investigations, discussions with other investigators, and discussions with persons arrested for controlled substance offenses, I am familiar with the actions, habits, and terminology of drug traffickers. I am familiar with the ways in which drug traffickers conduct their business, including methods of obtaining, distributing, and storing controlled substances as well as the collection and movement of proceeds from drug trafficking. Based on my knowledge, training, and experience, individuals who illegally distribute controlled substances frequently use electronic devices and

communication platforms to facilitate and memorialize their illegal activities. I know the following:

a)     The evidence, fruits, and instrumentalities of criminal activity are often concealed in digital form. For example, phone digital camera technology is often used to capture images of tools and instrumentalities of criminal activity, including controlled substances, cash, and firearms.

b)     Individuals who illegally distribute controlled substances often use electronic devices and communication platforms (e.g., text messaging, social media, etc.) to advertise their product and arrange illegal transactions.

c)     Individuals who illegally distribute controlled substances often use electronic devices to maintain contact lists of their suppliers and customers and keep ledgers of money owed for product advanced on credit.

## PROBABLE CAUSE

7.     Beginning in February 2023, an HSI Raleigh confidential informant ("CI") – whose information has been corroborated to the extent possible, with nothing being found to be untruthful, so I submit the CI as credible and reliable – informed investigators a 100-kilogram shipment of crystal methamphetamine was destined for the Durham, NC, area via an 18-

wheel tractor trailer from California.

8.     The CI had been in telephonic communication with multiple members of the Drug Trafficking Organization (DTO) based out of Mexico and California. One of the DTO members in Mexico informed the CI someone would reach out via telephone number (209) 618-8623 to coordinate the methamphetamine shipment from California to North Carolina.

9.     At the direction of law enforcement, the CI placed a recorded phone call to the telephone number ending in 8623. During the conversation, the person on the other end of the call informed the CI the tractor-trailer was having mechanical problems and confirmed the truck, with the shipment of narcotics, would arrive on February 24, 2023.

10.    Investigators searched public records for the telephone number ending in 8623, which indicated the telephone number was associated to Daniel De La Cruz ALVARADO (DOB: 07/16/1983) with an address of 2020 Cheyenne Way, Apt 233, Modesto, CA. A search of California Department of Motor Vehicles (DMV) records revealed a valid driver's license for ALVARADO under DL #: Y4468579. ALVARADO's listed address was 136 Algen Avenue, Modesto, CA. According to T-Mobile records, the telephone number is subscribed to "ANTONIO AVARADO" at 136 Algen Ave, since April 30, 2021. T-Mobile also had the customer's name listed as "De la cruz Dante".

11. The following day, February 24, 2023, the CI spoke with a male party at the telephone number ending in 8623, who informed the CI the driver of the narcotics shipment had to make a delivery of legitimate cargo in Charlotte, NC, and would arrive in the Raleigh/Durham area around 5:00 p.m. that afternoon.

12. The same afternoon, the CI spoke with a Hispanic male (later identified as RODRIGUEZ) using telephone number (209) 626-9585. RODRIGUEZ identified himself as the driver of the truck that was going to meet the CI. The driver stated the previously agreed upon parking lot was not going to work because the driver would be unable to park the tractor-trailer in that parking lot. The driver then provided the CI the address of a Petrol Truck Stop in Mebane, North Carolina as a potential meet location.

13. Investigators queried public records for telephone number (209) 626-9585, which revealed the number was associated to RODRIGUEZ with an address of 2122 W. Fir Ave, Merced, CA, as of January 2023. Public records also indicated RODRIGUEZ was listed as the Director, President, and CEO for Road Logistics Transports as of December 2022. A search of public records for Road Logistics Transports revealed a listed address of RODRIGUEZ home address. RODRIGUEZ was listed as a current executive and Daniel A De La Cruz was listed as a prior executive (Director). According to AT&T records, the telephone number was subscribed to RODRIGUEZ at

his home address since March 5, 2022.

14.     Throughout the day, the CI and RODRIGUEZ held a series of telephonic communications. During these calls, they discussed alternative meeting locations and RODRIGUEZ provided a description of the tractor-trailer he was driving. Additionally, throughout the duration of these calls, the CI informed RODRIGUEZ they would be discussing the plans they were making with the source of supply in Mexico to ensure the directions they were being provided was arranged and approved through them.

15.     During the conversations, RODRIGUEZ provided the CI with an address to a Holiday Inn Express, 202 Cardinal Drive, Hillsborough, NC, and informed the CI he would make the delivery at the hotel.

16.     Shortly thereafter, investigators arrived at the Holiday Inn and observed the only commercial tractor truck in the parking lot, which fit the same description previously provided by RODRIGUEZ, which did not have a trailer attached to it. The truck driver had previously told the CI that he had dropped off his legitimate cargo earlier in the day and was supposed to pick up a new load the following day. Investigators confirmed the truck did not have a license plate; however, it had identification markings indicative of a commercial tractor-trailer and the business name "Road Logistics Transports".

17.     Law Enforcement continued to maintain surveillance of the

tractor truck at the Holiday Inn during the time of which multiple telephone calls were ongoing between the Mexico based source of supply, the California based broker (telephone number ending in 8623) and RODRIGUEZ (telephone number ending in 9585) to discuss the location the transaction would transpire. After this series of calls, the CI informed RODRIGUEZ that the CI was en route to the Holiday Inn to conduct the transaction. RODRIGUEZ stated "they" were in their hotel room and would meet the CI in the parking lot. RODRIGUEZ informed the CI to park behind the truck, approach the passenger side of the truck and conduct the transaction, as to not be seen in the parking lot, and their truck was the only one in the parking lot. Shortly after this telephone call, investigators observed two Hispanic males exit the Holiday Inn and approach the tractor-truck, where they stayed until law enforcement approached the approached them a short time later.

18.    At approximately 10:00 p.m., Orange County Sheriff's Office (OCSO) personnel, with the assistance of HSI Greensboro and HSI Raleigh agents contacted the occupants of the truck in the parking lot of the Holiday Inn. The occupants were fully identified as RODRIGUEZ and Alfredo Pizarro ORTIZ by their respective California driver's licenses. An OCSO narcotics detection K-9 was utilized to conduct an exterior sniff of the vehicle, which resulted in a positive alert for the odor of narcotics. A subsequent search of the truck cab resulted in the location of two gray colored duffle bags that

contained approximately 50 pounds of crystal methamphetamine. The duffle bags were found on top of the sleeper bed which is directly behind the cockpit of the truck and visible from both the driver and passenger seat of the truck. Investigators located a black iPhone with a white colored case on ORTIZ's person that was powered on and appeared to have active service. Investigators also located a navy-blue colored Samsung cell phone, which was powered off when found, in a fanny pack that also contained ORTIZ's wallet and passport. Also seized were two phones, a pink colored Samsung, model SM-S901U and a black Samsung folding cell phone, model SM-F926U that RODRIGUEZ indicated belonged to him. An additional purple colored Samsung Galaxy Note 9 was also located and seized from the truck. On February 28, 2023, law enforcement placed a call to (209) 626-9585 and watched the pink colored Samsung ring.

19.    During a subsequent interview of RODRIGUEZ, RODRIGUEZ stated he had been a narcotics courier for various DTOs operating out of California since approximately 2020. RODRIGUEZ picked up the methamphetamine on February 20, 2023, in Ontario, California, and he and ORTIZ travelled together to North Carolina prior to their contact with law enforcement on the night of February 24, 2023. RODRIGUEZ informed investigators he was the person coordinating the shipment and ORTIZ was unaware of the contents of the boxes. During the interview, RODRIGUEZ

corroborated information provided by the CI as to the details of their telephone-based conversations leading to the arrest and seizure.

20.     Investigators conducted telephone toll analysis for (209) 618-8623 (California based broker), which revealed RODRIGUEZ was the top contact for the telephone ending in 8623 from January 27, 2023 through February 24, 2023. Toll records also revealed the telephone number ending in 8623 was in frequent communication with RODRIGUEZ on February 23 and 24, while the CI was coordinating with both of them the delivery of the narcotics.

21.     Based upon my training and experience, I know that drug traffickers utilize cellular devices to facilitate their drug crimes. I know that these devices are used to communicate with accomplices, co-conspirators, and sources of supply.  Drug traffickers use these devices to arrange and coordinate transactions with their customers. I have found that these devices often store evidence of these communications, which is often in the form of photographs and/or video of contraband that the drug trafficker shares with potential customers as advertisement. I have also found that drug traffickers share photographs and/or video of drugs, firearms, and proceeds with other drug traffickers to boast about their accomplishments. The examination of these devices often leads to the discovery of additional evidence relevant to the investigation, as well as the identification of others involved in the

criminal organization.

22.     The Devices described in Attachment A are currently in storage at HSI Greensboro, 426 Gallimore Dairy Road – Suite 100, Greensboro, NC. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state they were when the Devices first came into the possession of HSI.

## CONCLUSION

23.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICES described in Attachment A to seek the items described in Attachment B.

24.    Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

/S/ Tyler Dishmond
Tyler Dishmond, Special Agent
Homeland Security Investigations

On this 14th day of March, 2023, at 12:07 pm, the affiant appeared before me via reliable electronic means by telephone, was placed under oath, and attested to the contents of this affidavit.

HON. JOE L. WEBSTER
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

Four devices seized on February 24, 2023, in Hillsborough, North Carolina that are in the custody of Homeland Security Investigations (HSI) at 426 Gallimore Dairy Road – Suite 100, Greensobro, NC.:

Samsung (SM-S901U) Cellular Device
S/N R5CT438DYXX; and

Samsung (SM-F926U) Cellular Device
S/N R3CRC02BTLR; and

Black iPhone seized from Alfredo Pizzaro ORTIZ person; and

Blue Samsung cell phone seized from ORTIZ belongings
IMEI: 351347074317538

This warrant authorizes the forensic examination of the devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.    Records on the Devices described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1) and 846 in the form of the following:

   a. Records and information referencing or revealing the possession or sale of controlled substances, including the date, location, and participants;

   b. Records and information referencing or revealing customer lists and drug ledgers;

   c. Records and information referencing or revealing association with entities that are known to traffic in controlled substances, including criminal street gangs;

   d. Records and information referencing or revealing the possession of items commonly used in the trafficking of controlled substances;

   e. Records and information referencing or revealing the possession of firearms;

   f. Records and information referencing or revealing items that may be the proceeds of controlled substance trafficking including money and related accounts and jewelry.

2.    Evidence of user attribution showing who used or owned the Device at the time the above records and information were created, edited, deleted, or otherwise interacted with.

3.    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.